# In the United States Court of Federal Claims
OFFICE OF SPECIAL MASTERS
No. 12-706V
Filed: July 29, 2016

* * * * * * * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| ERICA EVANS, M.D., | * | Not for Publication |
| | * | |
| Petitioner, | * | |
| v. | * | Attorney's Fees and Costs; |
| | * | Contested; Range. |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, for petitioner.
Traci R. Patton, United States Department of Justice, Washington, DC, for respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

**Roth,** Special Master:

On October 17, 2012, Erica Evans, M.D. ("Dr. Evans" or "petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"). *See generally* Petition ("Pet."). In an amended petition, petitioner alleged an influenza ("flu") vaccine[3] she received on October 7, 2009 triggered an autonomic nervous system dysfunction which caused her to suffer from orthostatic hypotension, intermittent numbness and tingling in extremities, and residual physical and

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to delete medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (1986). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner discusses the H1N1 vaccination she received on October 23, 2009 in her petition. However, this is not a covered vaccination. *See* § 300aa-14. In her amended petitioner, she only alleges the October 7, 2009 flu vaccine to be causal. *See* Amended ("Amend.") Pet., ECF No. 50.

psychological symptoms. *See generally* Amend. Pet., ECF No. 50. On April 13, 2016, the undersigned dismissed this case for insufficient proof linking the injury and vaccine. Decision, ECF No. 75. Petitioner now seeks an award of attorney's fees and costs on behalf of current and former counsel in the amount of $58,015.31, pursuant to §15(e) of the Vaccine Act. Motion for Attorney's Fees ("Motion for Fees") for *Current Counsel*, ECF No. 78, at 2; Motion for Fees for *Prior Counsel*, ECF No. 79. After careful consideration, the undersigned has determined to **grant both requests in full** for the reasons set forth below.

I. Facts.

Petitioner received the allegedly causal flu vaccination on October 7, 2009 at Piedmont Healthcare in Mooresville, North Carolina. Pet. at 1-2; Petitioner's Exhibit ("Pet. Ex.") 16 at 1-2. On October 27, 2009, petitioner presented to neurologist Dr. Dharmen Shah with paresthesias in both her upper and lower extremities, as well as shortness of breath. Pet. Ex. 1 at 11-12. Dr. Shah noted that petitioner's diagnosis may include Guillain-Barre Syndrome ("GBS"), "especially in the setting of the of [the] recent [uncovered] swine flu vaccine that she received," but there was no conclusive evidence of this. *Id.* He recommended that petitioner be admitted to Iredell Memorial Hospital ("Iredell") Intensive Care Unit. *Id.*

Upon admission to Iredell on October 27, 2009, petitioner was evaluated by Dr. Deborah London, who confirmed Dr. Shah's diagnosis of paresthesias of the extremities. Pet. Ex. 11 at 26. She also diagnosed petitioner with hypertension. *Id.* During her stay at Iredell, petitioner's symptoms "waxed and waned rather than progressed and then regressed." Pet. Ex. 11 at 23. While petitioner did experience periods of high blood pressure and hyperventilation, she was not medicated for either. *Id.* Additionally, petitioner seemed to have "significant anxiety" but fervently denied being anxious. *Id.* Based on these inconclusive symptoms, she was discharged from Iredell on October 30, 2009. *Id.* at 24. In her discharge orders, GBS was ruled out and Dr. London wrote "[p]atient had paresthesias that were not related to [GBS] and this was not related to the H1N1 vaccine." *Id.*

The next day, petitioner was admitted to the Lake Norman Regional Medical Center ("Lake Norman") Emergency Room for shortness of breath, generalized weakness, and tremors. Pet. Ex. 7 at 139. At Lake Norman, petitioner presented with high blood pressure. *Id.* Once petitioner's vital signs were under control, she was transferred to Presbyterian Hospital ("Presbyterian") on November 3, 2009. *Id.* at 59-60. While at Presbyterian, petitioner was evaluated by a neurologist, Dr. Christopher M. Polk, who stated that petitioner may be suffering from a conversion disorder as it "seems unlikely [that] this is a post viral neurological syndrome." Pet. Ex. 8 at 18-19. Also, because the onset of petitioner's symptoms began within hours of the H1N1 vaccine, "any link to vaccination seem[ed] unlikely." *Id.* at 19. Based on this diagnosis, Dr. Polk recommended continued "supportive care" and for petitioner to "increase her mental and physical activity level…and push herself in this regard" with the goal of accelerating her recovery. *Id.*

Also while at Presbyterian, petitioner took a diagnostic "Head up tilt test." *Id.* at 21. The results of the tilt test suggested petitioner was suffering from orthostatic hypotension. *Id.* Petitioner also underwent an evaluation by Ervin Batchelor, Ph.D., who attempted to complete a

2

Minnesota Multiphasic Personality Inventory ("MMPI") test to identify any behavioral issues petitioner might have been suffering from. *Id.* at 16. However, Dr. Batchelor was unable to complete the MMPI test as petitioner "developed a spell and was unable to complete the test." *Id.* Dr. Batchelor suggested considering an outpatient neuropsychological evaluation and a dysautonomia work-up. *Id.* at 16-17. Finally, he agreed with Dr. Schmidt, who had suggested these "spells are more characteristic of panic attacks." *Id.* Petitioner was discharged from Presbyterian on November 7, 2009 with her final diagnosis being hypertension, cervical disc disease, and multifaceted neurological symptomology–probable conversion versus somatoform disorder. *Id.* at 13. Dr. Schmidt encouraged petitioner to follow-up with an outpatient neuro-psychologist and suggested a tertiary medical center as petitioner and her family were focused on an "organic explanation" for her symptoms. *Id.* She has since refused further medical testing related to this alleged injury and therefore had no definitive diagnosis attributable to her vaccine. *See e.g.* Scheduling Orders, ECF Nos. 56, 73.

Petitioner submitted additional medical records concerning other health issues unrelated to the vaccine and injuries in question which will not be discussed here.

## II.     Procedural History.

This case was filed on October 17, 2012 and initially assigned to Special Master Moran. Notice of Assignment, ECF. No. 2. Petitioner was initially represented by Ms. Danielle Strait of Maglio Christoper & Toale. Pet. at 3. Petitioner filed medical records numbered as Exhibits 1-9 on December 13, 2012. Notice of Intent, ECF No. 9. Additional medical records were filed on January 11, 2013, January 28, 2013, and March 28, 2013. ECF Nos. 12, 13, 18.

This case was reassigned to Special Master Hamilton-Fieldman on April 9, 2013. Order Reassigning Case, ECF No. 23. Additional medical records were filed on May 31, 2013, along with a Statement of Completion. ECF Nos. 24, 25. On June 21, 2013, petitioner filed her vaccine records labelled as Exhibit 16. Notice of Filing Vaccine Records, ECF No. 28. Respondent filed a status report on July 2, 2013 pursuant to the April 2, 2013 order by previously-assigned Special Master Moran. Status Report, ECF No. 30. In this report, respondent's counsel advised that the record was sufficient for preparing her Rule 4 Report and requested a deadline of August 20, 2013. *Id.*

Respondent's counsel filed her Rule 4 Report on August 21, 2013. Respondent's Report ("Report"), ECF No. 31. In the report, respondent contends that petitioner failed to assert an injury and satisfy any of the three prongs of *Althen*, as petitioner did not assert a medical theory of causation, a logical sequence of cause and effect, and a proximate temporal relationship. Report at 9-11; *Althen v. Sec'y of HHS*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). A status conference was held on September 26, 2013 to discuss the shortcomings of petitioner's case as described in the Rule 4 Report. Scheduling Order, ECF No. 32. Petitioner's counsel noted that she would like time to confer with her client regarding how petitioner would like to proceed with the case. *Id.* Special Master Hamilton-Fieldman stated that another status conference would be held on October 24, 2013. *Id.* Before said conference, petitioner was to decide whether she wanted the conference to be a Rule 5 status conference, where the Special Master would present her tentative initial findings and conclusions. *Id.*

3

On October 24, 2013 at the previously scheduled status conference, petitioner's counsel informed Special Master Hamilton-Fieldman that she would no longer be representing Dr. Evans. Scheduling Order, ECF No. 33. Petitioner requested 70 days to attempt to find other counsel and solicit a medical expert and thus, Special Master Hamilton-Fieldman set a deadline of January 2, 2014 for a motion to withdraw and a status report. *Id.* Several motions for extensions of time were filed by petitioner (Motions, ECF Nos. 34, 35) and several status conferences were rescheduled (*see* Scheduling Orders (non-PDF), April 22, 2013, April 29, 2013, and May 7, 2013). A status conference was held on May 14, 2014. Scheduling Order, ECF No. 37. Ms. Strait, appearing and reiterating that she would no longer be representing petitioner, requested an additional 60 days for petitioner to obtain new counsel and an expert. *Id.* Special Master Hamilton-Fieldman granted petitioner 77 days to obtain counsel and an expert, but advised petitioner that she needed to find an expert who could opine on causation. *Id.* Additionally, Ms. Strait needed to file a motion to withdraw as counsel before the next status conference, which she set for July 29, 2014. *Id.*

Petitioner filed a status report informing the court that Ms. Strait would be representing her for the next scheduled status conference. Status Report, ECF No. 38. During the status conference, Special Master Hamilton-Fieldman ordered petitioner to file a status report identifying an expert who could opine on her behalf or if she is unable to obtain an expert, inform the court of how she would like to proceed. Scheduling Order (non-PDF), dated August 20, 2014. Ms. Strait filed a motion to withdraw as petitioner's attorney on October 3, 2014 which was granted on October 7, 2014. Motion to Withdraw as Attorney, ECF No. 40; Order, ECF No. 43. Petitioner filed a status report on October 6, 2014, naming Andrew Downing as her new attorney. Status Report, ECF No. 42.

On October 13, 2014, petitioner moved to substitute Mr. Downing for Ms. Strait as her counsel (Motion, ECF No. 44) which was granted in an order dated October 16, 2014. ECF No. 45. A status conference was held on November 12, 2014, with petitioner's new counsel present. Petitioner's counsel informed the court that he was undecided as to what type of expert to retain, so he planned on filing a witness statement to describe petitioner's symptoms before and after the allegedly causal vaccine. Scheduling Order, ECF No. 47.

Petitioner's counsel filed the witness statement December 9, 2014 (Notice of Filing Witness Statement, ECF No. 48) followed by a status report on December 11, 2014. Status Report, ECF No. 49. In the report, petitioner's counsel stated that based on the witness statement, he believed an amended petition needed to be filed. *Id.* He requested 14 days to file the amended petition and 84 days to file an expert report. *Id.*

Petitioner filed the amended petition reflecting the information supplied in the witness statement on December 15, 2014. Amend. Pet., ECF No. 50. On February 10, 2015, petitioner filed an expert report of Dr. David Axelrod (Notice of Filing, ECF No. 51), followed by medical literature and materials referenced in the report on February 13, 2015. Notices of Filing, ECF Nos. 52, 53. Respondent filed an expert report by Dr. Arnold Levinson and accompanying medical literature on April 10, 2015. Expert Report, ECF No. 55.

A status conference was held on April 29, 2015, at which Special Master Hamilton-Fieldman expressed concern regarding an unclear diagnosis, causation, the onset timing, petitioner's pre-existing conditions, and incomplete medical testing. Scheduling Order, ECF No. 56. Petitioner's counsel noted that his client was resistant to further medical testing. *Id.* Respondent therefore requested updated medical records and that a neuropsychological evaluation be conducted to possibly help clarify petitioner's diagnosis. *Id.* Special Master Hamilton-Fieldman ordered petitioner to file any outstanding medical records by July 1, 2015, as well as a status report outlining the next steps petitioner planned to take and a timeline for possible neuropsychological evaluation or for additional expert reports. *Id.*

Petitioner filed the additional medical records on June 8, June 10, June 30, July 23, and August 19, 2015 along with a Statement of Completion on August 20, 2015. Medical Records, ECF Nos. 57, 58, 59, 62, 65; Statement of Completion, ECF No. 66. Petitioner also filed a status report on August 21, 2015, notifying the court that she had retained a neuropsychiatrist to address the aforementioned issues raised by Special Master Hamilton-Fieldman, and provide an evaluation and expert report regarding petitioner's diagnosis. Status Report, ECF No. 67.

This case was reassigned to the undersigned on October 22, 2015. Notice of Reassignment, ECF No. 70. The undersigned reaffirmed the previous order and ordered petitioner to file an expert report and a neuropsychological evaluation by no later than December 18, 2015. Scheduling Order (non-PDF), dated November 18, 2015. No reports or motions for extension of time were filed by this deadline, so the undersigned issued an Order to Show Cause requiring the filing of petitioner's expert report and evaluation by February 5, 2016 or for petitioner to show cause as to why this case should not be dismissed. Order to Show Cause, ECF No. 71.

Petitioner responded to the Order to Show Cause on February 5, 2016, advising the court that the neuropsychological expert that petitioner's counsel intended to perform the evaluation and author a report, Dr. Cohen, had recently advised counsel that he would be unable to do so. Response to Order to Show Cause, ECF No. 72. Petitioner's counsel likewise stated that he had been unable to reach his client to discuss this issue. *Id.* Nevertheless, he requested a status conference for the parties to discuss how the case should proceed. *Id.*

A status conference was held on March 7, 2016, following which the undersigned ordered petitioner to file a status report advising the court on how petitioner wishes to proceed by no later than April 6, 2016. Scheduling Order, ECF No. 73. Instead of filing a status report, petitioner filed a motion seeking to dismiss her petition on April 12, 2016. Motion for Dismissal Decision, ECF No. 74. In this motion, petitioner admits that she would be unable to meet her burden of proof to demonstrate entitlement to compensation. *Id.* Petitioner also informed the court of her intention to reject the Vaccine Program judgment against her and elect to file a civil suit at a later date. *Id.*

The undersigned issued a decision on April 13, 2016, determining that petitioner is not entitled to compensation based on the evidence presented and this case was dismissed for insufficient proof. Decision, ECF No. 75. The parties then filed a joint notice not to seek review

on April 21, 2016 (Joint Notice, ECF No. 76), and judgment was entered on April 25, 2016. Judgment, ECF No. 77.

On April 26, 2016, petitioner filed motions for attorneys' fees for both present counsel, Andrew Downing (Motion for Attorney's Fees *(Current Counsel)*, ECF No. 78) and for previous counsel, Danielle Strait. Motion for Attorney's Fees *(Prior Counsel)*, ECF No. 79. For Mr. Downing, petitioner requested $23,765.50 in fees and $5,805.53 in costs, for a total of $29,571.03. ECF No. 78. For Ms. Strait, petitioner requested $25,673.00 in fees and $2,771.28 in costs, for a total of $28,444.28. ECF No. 79. In aggregate, the overall total requested is $58,015.31. On the same day, petitioner filed an election to file a civil action for this case. Petitioner's Election, ECF No. 80.

Respondent filed a response to petitioner's motion for attorney's fees on May 10, 2016. Response to Motion for Attorney's Fees ("Response"), ECF No. 82. Respondent made no specific objections to the attorneys' hours or rates. *Id.* at 3. Instead, respondent simply offered a range for total costs and fees in this case to be between $28,000 and $42,000. *Id.* While respondent did cite cases involving both Mr. Downing and Maglio Christopher & Toale (Ms. Strait's firm), she did not provide any reasoning as to why the specific fees in this case should be reduced. *Id*. Petitioner did not file a reply and therefore this matter is now ripe for decision.

### III. Applicable Law.

The Vaccine Act allows Special Masters to award attorney's fees and costs to a petitioner if the claim was brought in good faith and with "reasonable basis." § 15(e). This is a discretionary determination made by the Special Master, which does not require a line by line analysis. *Broekelschen v. Sec'y of HHS*, 102 Fed. Cl. 719, 729 (2011). Rather, the fact finder uses a lodestar method – multiplying a "reasonable" fee by the hours the attorney worked. *Blanchard v. Bergeron,* 489 U.S. 87, 94 (1989); *Schueman v. Sec'y of HHS,* No. 04-693V, 2010 WL 3421956, at *3 (Fed. Cl. Spec. Mstr. Aug. 11, 2010). While respondent does have the opportunity to object to said amount, pursuant to the Vaccine Rules, when no justification or specific objection is proffered, her "representation carries very little weight." *Reyes v. Sec'y of HHS*, No. 14-953V, 2016 WL 2979785, at *1 (Fed. Cl. Spec. Mstr. Apr. 27, 2016) (specifically when the attorneys of record supply detailed time sheets and present a *complete* case).

The recent decision in *McCulloch* provides a framework for consideration of appropriate ranges for attorney's fees based on the experience of a practicing attorney. *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015) *motion for recons. denied*, 2015 WL 6181910 (Fed. Cl. Spec. Mstr. Sept. 21, 2015). According to *McCulloch*, if an attorney has been practicing for 20 or more years, an appropriate range is approximately $350 to $425 per hour. *Id.* If an attorney has 11 to 19 years of experience, $300 to $375 is proper. *Id.* For 8 to 10 years of experience, $275 to $350 is appropriate. *Id.* For 4 to 7 years of experience, $225 to $300 is sufficient. *Id.* If an attorney has fewer than 4 years of experience, he/she should receive between $150 to $225. *Id.*

IV.     Discussion.

In her Response, respondent provided no specific objection to the amount requested or the hours worked in this matter, but instead, offered a range which she believes is reasonable to pay the attorneys who worked on this case. Response at 3. Respondent simply "reminded" the Court of its discretion in awarding fees, quoting *Fox v. Vice,* and reiterated the fact that "the determination of [attorney's] fees 'should not result in a second major litigation.'" Response at 2-3.

Andrew D. Downing is an accomplished attorney who has worked at Van Cott & Talamante since 2014, but has over twenty years of litigation experience and has been practicing in the Program for approximately fourteen years. *Al-Uffi v. Sec'y of HHS*, No. 13-956V, 2015 WL 6181669, at *11 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). Mr. Downing submitted an hourly rate of $350 for himself and $195 for Jordan Redman, $100 for Robert Cain, $100 for Danielle Avery and $195 for Courtney Van Cott; although the case was pending for approximately three years, the rates remained consistent throughout the duration of the case. Motion for Fees *(Current Counsel)* at 29. These rates have been upheld in a number of recent decisions by multiple Special Masters. *See e.g. Uscher v. Sec'y of HHS*, No. 15-798V, 2016 WL 3670518 (Fed. Cl. Spec. Mstr. June 15, 2016); *Allicock v. Sec'y of HHS*, No. 15-485V, 2016 WL 3571906 (Fed. Cl. Spec. Mstr. May 26, 2016). Therefore, because Mr. Downing's hourly rates have been approved several times this year and fall into the *McCulloch* ranges for his tenure (approximately 20 years of service at a rate of $350 to $425), his request for fees shall be granted in full.

Danielle A. Strait has been barred in the state of California since 2010 and in Washington DC since 2014. ECF No. 79 at 59. Starting in August of 2009, Ms. Strait clerked for then-Chief Special Master Golkiewicz of the Office of Special Masters ("OSM"), drafting substantive decisions specifically relating to vaccine litigation. *Id.* at 60. Ms. Strait has been employed at the Maglio Christopher & Toale since October of 2012, primarily litigating vaccine claims. *Id.* at 60-61. Ms. Strait's current hourly rate is $306, which was increased specifically because of the *McCulloch* ruling. *Id.* at 61. However, her previous rate of $295, which was in effect from 2012-2015, was the rate she charged in this case as her work occurred in 2014 (Motion for Fees *(Prior Counsel)* at 4). This rate has been approved by various Special Masters. *See e.g. Clowser v. Sec'y of HHS*, No. 13-2V, 2016 WL 3265894 (Fed. Cl. Spec. Mstr. May 23, 2016); *O'Neill v. Sec'y of HHS*, No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Additionally, Ms. Strait argues that attorney's fees awards in the Program should be awarded on a case-by-case basis, as Congress did not intend awards of fees to be in a "one size fits all manner." ECF No. 79 at 62-63. This argument is supported not only by §15(e), but also by the decision in *McCulloch*, which specifically lays out the criteria that attorney's fees awards should be based on. Therefore, because Ms. Strait's hourly rate is well within the suggested *McCulloch* ranges ($225 to $300 for 4-7 years of experience, with consideration for Ms. Strait's time spent as a law clerk at the OSM) and has been recently affirmed because of her extensive experience in the Program, her requested attorney's fees will be granted in full.

After reviewing the billing records, the amount of hours billed seems reasonable and I see no erroneous or duplicative billing. *See generally* ECF Nos. 78-79. I therefore see no reason to reduce petitioner's application for fees and costs.

## V. Total Award Summary.

I find that petitioner's counsel's request is reasonable and she is entitled to the requested fees and costs pursuant to § 15(e)(1). For the reasons contained herein, **a check in the amount of $58,015.31[4] made payable jointly to petitioner, Erica Evans, M.D., and petitioner's current counsel of record, Andrew D. Downing, and petitioner's previous counsel of record, Danielle A. Strait, for petitioner's attorney's fees and costs shall be issued.**

The clerk of the court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**

                                  **s/Mindy Michaels Roth**
                                  Mindy Michaels Roth
                                  Special Master

---

[4] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs," as well as fees for legal services rendered. Furthermore, §15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of HHS*, 924 F.2d 1029 (Fed. Cir. 1991).

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. *See* Vaccine Rule 11(a).